UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALTON PERKINS-BEY, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:11CV310 JCH |
| | ) |
| HOUSING AUTHORITY OF ST. LOUIS COUNTY, et al., | ) |
| | ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Alton Perkins-Bey's Motion for Preliminary Injunction Order, filed February 18, 2011. (Doc. No. 3). The matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Alton Perkins-Bey is a fifty-five year old male, who recently had a cancerous bladder tumor removed. (Joint Stipulation of Uncontroverted Facts ("Facts"), ¶ 1). In 1975, Plaintiff was convicted of two counts of rape in Jackson County, Missouri. (Facts, ¶ 6). Plaintiff served time in prison for approximately fourteen years, and was released on parole in 1988. (Id., ¶ 7). Plaintiff's parole completion date is July 22, 2049. (Id., ¶ 9).[1]

In or around 2004, Plaintiff submitted an application for Section 8 housing assistance with Defendant Housing Authority of St. Louis County[2] ("HASLC"), and was placed on a waiting list. (Facts, ¶¶ 2, 11). Plaintiff completed an Application Update packet, and signed a Criminal History

---

[1] Defendants agree Plaintiff has had no criminal convictions since 1975, and that to the best of their knowledge, has engaged in no relevant criminal activity since that time. (Facts, ¶¶ 24-26).

[2] HASLC is and at all relevant times was a Public Housing Agency within the meaning of the United States Housing Act and its implementing regulations. (Facts, ¶ 4).

and Activity Disclosure Statement on or about November 19, 2008. (Id., ¶ 12). Neither the information provided by Plaintiff in his initial application, nor the results of any background checks which may have been performed, is known, as those documents were destroyed by HASLC in accordance with its Administrative Plan. (Id., ¶¶ 11, 12).

After holding two meetings with Plaintiff in November, and December, 2008, and conducting a full background check, HASLC approved Plaintiff's application for the Section 8 Voucher Program. (Facts, ¶ 13). Plaintiff was admitted to the Section 8 Voucher Program in or around January, 2009, and began receiving Section 8 Voucher assistance from HASLC. (Id., ¶ 14). HASLC currently pays Plaintiff's entire rent, and until recently paid Plaintiff $74 each month to help defray the cost of utilities for his apartment. (Id., ¶¶ 2, 17).

In 2006, Congress passed the Adam Walsh Child Protection Safety Act of 2006, codified as 42 U.S.C. § 16913, and known as the Sex Offender Registration and Notification Act, or SORNA. SORNA requires that certain sex offenders register with the state sex offender registry system where the sex offender resides. See 42 U.S.C. § 16913(a).[3] By regulation, SORNA was made applicable to all sex offenders, including those convicted of the offense for which registration is required prior to the enactment of the Act. See 28 C.F.R. § 72.3. Upon learning of SORNA's requirements from his parole officer, Plaintiff registered as a sex offender in August, 2009. (Facts, ¶ 19). Plaintiff did not list his rape conviction on his October 22, 2009, "Personal Declaration," completed as part of his

---

[3] Missouri has its own Sex Offender Registration Act, Mo. Rev. Stat. § 589.400 et seq., known as "Megan's Law." Plaintiff is not subject to Megan's Law, however, as it imposes registration requirements only on persons convicted of certain felonies, including rape, since July 1, 1979. As noted above, Plaintiff's conviction occurred prior to July 1, 1979. In 2009, however, the Missouri Supreme Court held that all sex offenders subject to registration requirements under SORNA are required to register in Missouri, regardless of whether they are subject to Megan's Law. See Doe v. Keathley, 290 S.W.3d 719 (Mo. 2009).

annual recertification process with HASLC. (Id., ¶ 16). He did list the conviction on his October 7, 2010, Personal Declaration. (Id.).

On October 8, 2010, HASLC sent Plaintiff a notice entitled "Proposed Termination of Rental Assistance." (Facts, ¶ 20). The Notice advised that HASLC was considering terminating Plaintiff's assistance under the Section 8 Voucher Program effective November 30, 2010, because he:

(x) 4. Violated one or more family obligations by:

    (x) c. criminal activity or substance abuse (see enclosed report)

        (x) 1) lifetime registration under state sex offender registration program.

(Id., ¶ 21). A hearing on the proposed termination was held on October 21, 2010. (Id., ¶ 22). On October 28, 2010, the HASLC hearing officer issued a decision affirming the termination of Plaintiff's Section 8 Voucher Program assistance. (Id., ¶¶ 22, 23). As grounds for her ruling, the hearing officer stated as follows: "The Authority must deny assistance if any household member is subject to a lifetime registration requirement under a state sex offender registration program. 24 CFR 982.553 (Administrative Plan page 11-12)." (Id., ¶ 23).

Plaintiff filed his Complaint in this matter on February 18, 2011. (Doc. No. 1). Named as Defendants are HASLC and Susan Rollins, in her official capacity as Executive Director of HASLC. In his Complaint, Plaintiff asserts that HASLC's decision to terminate his Section 8 Voucher assistance violated the United States Housing Act, 42 U.S.C. § 1437d(k), 24 C.F.R. §§ 982.553, 982.555(c)(2) & (e)(6) and 42 U.S.C. § 1983 (Counts I and IV); the Fourteenth Amendment to the United States Constitution (Counts II and V); and the Missouri Administrative Procedure Act, Mo. Rev. Stat. § 536.100, et seq. (Count III). In his Motion for Preliminary Injunction Order, filed that same day, Plaintiff requests a preliminary injunction that, pending a hearing on Plaintiff's request for a permanent injunction:

A. Enjoins Defendants to rescind their Notice of Section 8 Voucher Program assistance termination;

B. Restrains Defendants from terminating Plaintiff's Section 8 Voucher Program assistance;

C. Orders Defendants to make rental assistance payments to Plaintiff's landlord pending a hearing on Plaintiff's request for a permanent injunction; and

D. Grants such other and further relief as may be necessary and proper.

(Doc. No. 3).

**DISCUSSION**

The Eighth Circuit has held that, "[i]n deciding a motion for a preliminary injunction, a district court balances four factors: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003), citing Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." Watkins, 346 F.3d at 844 (internal citations omitted). "The primary function of a preliminary injunction is to preserve status quo until, upon final hearing, a court may grant full effective relief." Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 490 (8th Cir. 1993) (internal quotations and citations omitted).

Upon consideration of the foregoing standards, this Court will grant Plaintiff's request for a preliminary injunction. First and foremost, the Court finds that on the record before it, Plaintiff has successfully demonstrated a likelihood he will succeed on the merits. See Missouri Republican Party v. Lamb, 87 F.Supp.2d 912, 915 (E.D. Mo. 2000) ("...the probability that the movant will succeed on the merits is generally regarded as the most important factor of the *Dataphase* test,..."). Beginning with the statutes themselves, the Court notes that 42 U.S.C. § 13663 mandates only that owners of

federally assisted housing prohibit *admission* to such housing "for any household that includes any individual who is subject to a lifetime registration requirement under a State sex offender registration program." 42 U.S.C. § 13663(a). The provision governing termination of such tenancy and assistance does not address individuals subject to lifetime registration requirements, however; instead, it provides only for discretionary termination of those households with a member illegally using a controlled substance, or a member whose illegal use of a controlled substance or abuse of alcohol is determined to interfere with the health, safety, or right to peaceful enjoyment of the premises by other residents. See 42 U.S.C. § 13662(a). See also Miller v. McCormick, 605 F.Supp.2d 296, 308 (D. Me. 2009) ("For whatever reason, there is no counterpart to § 13662(a) for lifetime sex offender registrants that requires their termination from participation once they have been admitted into the program.").

The implementing regulations are consistent with the statutes. In other words, while 24 C.F.R. § 982.553 provides for mandatory prohibition of admission when any member of the household is subject to a lifetime registration requirement under a State sex offender registration program, it does not address terminating assistance to such households already receiving assistance. See 24 C.F.R. §§ 982.553(a)(2)(i), 982.553(b). See also Miller, 605 F.Supp.2d at 309 ("Significantly, consistent with the distinction Congress drew between drug users and alcohol abusers, on the one hand, and lifetime sex offender registrants, on the other, there is no express provision in the regulations that authorizes termination of participation for lifetime registrants.").[4]

Turning to Defendants' October 28, 2010, decision terminating Plaintiff's housing assistance, the Court finds the reasons stated by the hearing officer insufficient to justify her ruling. As noted

---

[4] The United States Department of Housing and Urban Development ("HUD") itself apparently recognizes the gap in coverage, as in a September 9, 2009, Notice it stated as follows: "HUD is currently exploring regulatory and legislative changes to ensure that individuals subject to lifetime registration requirements do not continue to reside in federally assisted housing." (See Doc. No. 11-1, P. 1).

above, the hearing officer held as follows: "The Authority *must* deny assistance if any household member is subject to a lifetime registration requirement under a state sex offender registration program. 24 CFR 982.553 (Administrative Plan page 11-12)." (Doc. No. 1-2 (emphasis added)). As previously explained, however, the cited federal regulation does not mandate *termination* of assistance. See 24 C.F.R. §§ 982.553(a)(2)(i), 982.553(b). Furthermore, as to the portion of HASLC's Administrative Plan cited by the hearing officer, the Court notes such provision, in keeping with the federal regulations, only compels the Authority to deny initial participation when any household member is subject to a lifetime registration requirement; it does not mandate termination of previously approved assistance. (See Doc. No. 1-3, P. 6).[5]

Under these circumstances, the Court finds a great likelihood Plaintiff will succeed in demonstrating Defendants violated his rights by discontinuing his Section 8 housing subsidy on the basis that he is required to register as a sex offender.

With respect to the other factors the Court must consider, the Court finds Plaintiff successfully has demonstrated Defendants' actions pose the threat of irreparable harm to Plaintiff, as the parties agree Plaintiff cannot afford the monthly rent for his home without assistance from the Section 8 Voucher Program, and will be evicted unless he can make arrangements to pay his full rent. (See

---

[5] The Court recognizes that a separate provision of the Administrative Plan provides the Authority may terminate participation when any member of the household is or becomes subject to a lifetime registration requirement. (See Doc. No. 12-1, PP. 29-30). Such provision cannot help Defendant here, however, for two reasons: first, because it was not cited in the hearing officer's decision, which referenced only Administrative Plan pages 11-12 (see Doc. No. 1-2); and second, because termination under the provision is not mandatory, but rather subject to the Authority's discretionary consideration of "all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity, and the extent to which the leaseholder has shown personal responsibility and has taken reasonable steps to prevent or mitigate the offending action." (See Doc. No. 12-1, P. 30). The Court's review of the record indicates the hearing officer did not take any of those circumstances into account, as she apparently believed termination was mandatory. (See Doc. No. 1-2).

Facts, ¶¶ 27, 28). Further, the Court finds the balance between that harm and the harm the requested relief would cause to Defendants favors the entry of injunctive relief, as requiring HASLC to continue making rent payments for Plaintiff throughout the pendency of this action can have little effect on its ability to fulfill its mission. Finally, the public interest weighs in favor of allowing Plaintiff, a seriously ill individual who has complied with the terms of his parole for over twenty years, to remain in his home.[6]

Based on the foregoing, the Court will enter a preliminary injunction in this matter, in order to preserve the issues in the Complaint for decision by this Court upon final hearing on Plaintiff's request for a permanent injunction.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Alton Perkins-Bey's Motion for Preliminary Injunction Order (Doc. No. 3) is **GRANTED**.

---

[6] The Court acknowledges that Defendants proffer a second justification for Plaintiff's termination, i.e., his alleged failure to provide complete and accurate information on his application. (Defendants' Opposition to Motion for Preliminary Injunction, PP. 13-15). The Court agrees with Plaintiff that because such justification was not referenced in the proposed termination of rental assistance provided to Plaintiff, it cannot provide the basis for terminating his assistance at this time. To hold otherwise would run afoul of 42 U.S.C. § 1437d(k), which provides as follows:
> The Secretary shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will–
> (1) be advised of the specific grounds of any proposed adverse public housing agency action; [and]
> (2) have an opportunity for a hearing before an impartial party upon timely request....

See 42 U.S.C. § 1437d(k)(1) & (2). See also 24 C.F.R. § 982.555 (mandating that when a public housing authority decides to terminate assistance for a participant family because of the family's action or failure to act, it must give the family prompt written notice of both the reasons for the decision, and the family's right to request an informal hearing on the decision).

**IT IS FURTHER ORDERED** that Defendants Housing Authority of St. Louis County and Susan Rollins are hereby enjoined and restrained from terminating Plaintiff's Section 8 Voucher assistance until there is a hearing on Plaintiff's request for a permanent injunction.

**IT IS FURTHER ORDERED** that Defendants HASLC and Susan Rollins shall immediately take all steps necessary to continue to make rental assistance payments to Plaintiff's landlord, until there is a hearing on Plaintiff's request for a permanent injunction.

This Order shall continue in full force and effect until the Court issues a final ruling on the merits of this case.

Dated this 14th day of March, 2011.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE